UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS BARAJAS CENTENO,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF CARLSBAD; et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 19-cv-2098-L (DEB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>**[DKT. NO. 66]** |

　　　Before the Court is Plaintiff's "Motion for Sanctions Against Jordan Walker and City of Carlsbad Defendants and Daniel Modafferi." Dkt. No. 66. In addition to Plaintiff's Motion, the Court has received and reviewed Defendants' opposition (Dkt. No. 67), Plaintiff's reply (Dkt. No. 75), the video footage at issue (Dkt. No. 89), and Plaintiff's unsolicited supplemental filings (Dkt. Nos. 90, 93). On January 11, 2021, the Court held oral argument and took the matter under submission. Dkt. No. 96.

　　　Plaintiff's Motion seeks sanctions under Federal Rules of Civil Procedure 26(a)(2) and (g)(3) for alleged discovery violations arising out of Defendants': (1) delayed production of the arresting officers' body worn camera ("BWC") recordings; (2) alteration of the BWC and third-party video recordings; and (3) service of an expert report that fails

to comply with Rule 26(a)(2). Dkt. No. 66. For the reasons discussed below, the Court finds no basis to impose sanctions and DENIES the Motion.

## I. Factual and Relevant Procedural Background

On the evening of April 27, 2019, Defendants City of Carlsbad Police Officers Jordan Walker and James Gallivan approached Plaintiff as he was using a "slim jim" and a flashlight to open his truck. Dkt. No. 104 at 1–2.[1] Plaintiff alleges he told the officers the truck was his, but the officers became physically aggressive. *Id.* at 3. Plaintiff alleges the officers pushed him to the ground, kicked him, handcuffed him, arrested him, and falsely charged him with resisting arrest. *Id.* at 3–4. The state court dismissed the charge. *Id.* at 4.

Plaintiff has sued Officer Walker and Officer Gallivan for violating his civil rights and for malicious prosecution. *Id.* at 1–9. Plaintiff has also sued the City of Carlsbad (the City) pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and for malicious prosecution. *Id.* at 9–12.

On November 27, 2019, the City and Officer Walker served their initial disclosures which, among other things, disclosed the existence of the arresting officers' BWC recordings.[2] Dkt. No. 66 at 14. Thereafter, Plaintiff's counsel informally requested that Defendants produce the BWC footage. Dkt. No. 67-1 at 2, ¶ 6. Defendants responded they would not do so without a formal discovery request. *Id.* ¶ 7, p. 19 (Ex. B). On January 11, 2020, Plaintiff propounded a Fed. R. Civ. P. 34 request for production of the BWC recordings on Officer Walker. *Id.* ¶ 8. Officer Walker's responses would have been due on February 13, 2020, but on February 4, 2020, Magistrate Judge Linda Lopez vacated all discovery related deadlines when the parties tentatively settled the case. Dkt. No. 27. On March 9, 2020, after the parties were unable to finalize the settlement, Judge Lopez reset

---

[1] When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

[2] Officer Gallivan was not added to the case until the January 29, 2021 filing of Plaintiff's First Amended Complaint and, thus, was not a party to the case at this time.

case management deadlines, including Officer Walker's deadline to respond to Plaintiff's Rule 34 request. Dkt. No. 33 at 2. On March 30, 2020, Officer Walker timely responded, explaining the BWC recordings were not under his custody or control and informing Plaintiff "that responsive items are in the possession, custody, and/or control of the City of Carlsbad." Dkt. No. 67-1 at 22. Counsel then met and conferred and participated in a conference call with Judge Lopez's Chambers, after which Plaintiff propounded a Rule 34 request for the video recordings on the City. *Id.* at 3–4, ¶¶ 13–17. On May 28, 2020, the City produced all responsive electronically stored information, including thirteen BWC recordings. *Id.* at 5, ¶ 20, p. 39 (Ex. H). On June 1, 2020, Plaintiff's counsel raised concerns that the City or someone acting on Defendants' behalf altered the video footage. Dkt. No. 67-1, ¶ 21, pp. 41–42 (Ex. I) (raising concerns that videos appear to be altered because: (1) officers are not identified on BWC recordings; (2) some BWC recordings reflect an April 28, 2019 date, whereas the subject incident occurred the prior day; (3) poor sound quality; and (4) CBD00028-31 are four separate video clips from the same camera). On June 10, 2020, Plaintiff propounded additional discovery requests for chain of custody information for the videos. *Id.* at 5–6, ¶¶ 21–23, pp. 48–51 (Ex. K) and 54–57 (Ex. L). On July 15, 2020, the City responded and denied under oath that the video recordings were edited or altered. *Id.* at 6, ¶ 24, pp. 59–71 (Ex. M). On August 14, 2020, the City produced documents establishing the chain of custody for each produced video. *Id.* at 6, ¶ 25, pp. 73–109 (Ex. N).

On August 28, 2020, the City and Officer Walker served their Initial Expert Designation identifying retired Pasadena Police Chief Phillip L. Sanchez as their use of force and policies and procedures expert. Dkt. No. 66 at 18–36. On October 13, 2020, the City and Officer Walker served Mr. Sanchez's Rule 26(a)(2)(B) expert disclosure. Dkt. No. 67-1 at 6–7, ¶ 27, pp. 131-167 (Ex. P).

## II. Legal Standards

When a discovery order is violated, the Court can sanction the offending party under two sources of authority: Fed. R. Civ. P. 37(b)(2)(A) authorizes sanctions against a party

who "fails to obey an order to provide or permit discovery," and, if the court finds bad faith, it has the inherent power to sanction abusive litigation practices. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980) (remanding for consideration of sanctions under Rule 37 and the court's inherent power).

Fed. R. Civ. P. 26(g) also authorizes "appropriate" sanctions when an attorney or party improperly certifies a discovery response. *See, e.g.*, *R & R Sails, Inc. v. Ins. Co. of Pa.*, 251 F.R.D. 520, 525 (S.D. Cal. 2008) (imposing sanctions under Rule 26(g)(3) for counsel's false certification that no electronic records existed without making a "reasonable inquiry" as to their existence).

### III. Discussion

#### A. The City Timely Produced the Video Footage.

Plaintiff complains that "Defendants did not disclose video recorded evidence until May 28, 2020. More than six months after the [initial] disclosure, despite multiple requests for the items of evidence. . . ." Dkt. No. 66 at 2–3. The Court finds no basis to impose sanctions for any delayed production.

Fed. R. Civ. P. 26(a)(1)(A)(ii) states a party may comply with its initial disclosure requirements by providing a "description by category and location" of documents that are in its possession, custody, or control. *Accord Gardias v. Cal. State Univ.*, No. 09-cv-05291-HRL, 2010 WL 3504826, at *1 (N.D. Cal. Sept. 7, 2010) (Fed. R. Civ. P. 26(a)(1)(A)(ii) does not obligate a party to produce copies of documents as part of its initial disclosures, and "[i]nstead, a party may simply provide a description by category and location of the documents…."). Thus, Defendants had no obligation to produce the videos with their Initial Disclosures.

Although the Court encourages the parties to cooperate by producing relevant materials without requiring a formal request, the Federal Rules of Civil Procedure do not require the informal exchange of information. A party may have a legitimate reason for requiring a formal discovery request, especially when confidential or sensitive information is at issue. *See generally Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 11-cv-1273-

LJO(BAM), 2013 WL 1982797, at *6 (E.D. Cal. May 13, 2013) ("Plaintiff cannot rely solely on informal discovery requests to obtain documents, especially when the documents contain Defendant's sensitive and confidential financial information.") Plaintiff's informal requests for the videos, therefore, did not give rise to any duty on the part of Defendants to produce the BWC recordings.

When Plaintiff served a Rule 34 request on Officer Walker for the BWC recordings, Walker responded that he did not have the recordings, and that they were under the City's custody and control. Dkt. No. 67-1 at 3, ¶¶ 12–13, pp. 21–27 (Ex. C). Counsel then met and conferred and participated in a conference with Judge Lopez's chambers, after which Plaintiff's counsel agreed to propound a new Rule 34 request to the City. *Id.* at 3–4, ¶¶ 14–16. The City then timely produced the BWC recordings. *Id.* at 5, ¶ 20, p. 39 (Ex. H).

In sum, although Defendants put Plaintiff to his paces to obtain the videos, Defendants did not violate any rule. The Court, therefore, finds no basis to impose sanctions for any delayed production of the videos.

**B. The Court Finds no Evidence that Defendants Altered any Videos.**

Next, Plaintiff contends the Court should impose sanctions for Defendants' failure to disclose the identity of the individuals who altered the videos produced by the City. Dkt. No. 66 at 6–10. The City has repeatedly denied the videos were altered. *See* Dkt. No. 67-1 at 5, ¶ 22, pp. 45–46 (Ex. J), *id.* at 6, ¶ 24, pp. 59–71 (Ex. M).

Plaintiff's allegation that the videos are altered is serious but unsupported. Plaintiff has produced no analysis from an expert who has reviewed the videos. Nor has Plaintiff supported his allegation with any declaration or testimony from any individual familiar with the recording, handling, or production of the videos.

Instead, Plaintiff's tampering allegations are based on certain discrepancies that Plaintiff's counsel has observed. For example, Plaintiff's counsel notes some of the BWC recordings do not have any audio for the first sixty to ninety seconds (Dkt. Nos. 90 at 3, ¶ 14), and one bears an incorrect date (*id.* ¶ 13). Plaintiff also directs the Court's attention

to CBD0028-31, four video clips taken of footage that was filmed by a private security camera located near the scene of Plaintiff's arrest. *Id.* ¶ 9.

Due to the seriousness of the allegations and Plaintiff's lack of any substantiating evidence, the Court directed Plaintiff to lodge the videos for in camera review. *See* Dkt. Nos. 89, 93. The Court's review of these recordings did not reveal anything from which the Court could conclude that any were altered. To the contrary, all appear to be raw, unaltered footage.

In sum, Plaintiff has produced no evidence supporting his allegation that the videos were altered. The Court's review of the videos did not reveal anything from which the Court could make an independent finding that any video was altered. Instead, the most logical conclusion is that the City produced the videos as is, without alteration.[3] Accordingly, there is no basis to impose sanctions.

**C. Defendants' Expert Disclosure is not Sanctionable.**

Plaintiff also seeks sanctions in connection with Defendants' disclosures of its expert witness, Mr. Sanchez. Plaintiff alleges that Defendants' disclosures did not comply with Fed. R. Civ. P. 26(a)(2). Specifically, Plaintiff argues that Defendants' Initial Expert Designation does not satisfy Rule 26(a)(2) because it was not accompanied by Mr. Sanchez's written report. Dkt. No. 66 at 3.

//

---

[3] The Court's conclusion is reinforced by Plaintiff counsel's argument that the BWC footage establishes Defendants used excessive force. At oral argument, Plaintiff's counsel complained about one video that ended before the use of force occurred, but he described other videos that depict the force that he contends proves Plaintiff's case. Dkt. No. 103, at 4–5, lines 16–14. Similarly, Plaintiff's counsel has represented in filings that, in the video labeled "CBD0030," Officer Walker kicks Plaintiff twice, once fifty-seven seconds into the video and again at fifty-nine seconds. Dkt. No. 93 at 3, ¶ 12. Plaintiff counsel's characterization of these videos as evidencing Defendants' use of excessive force is inconsistent with Plaintiff counsel's allegation that the City altered the videos to deprive Plaintiff of relevant evidence.

Rule 26(a)(2) states:

(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

. . . .

(D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders.

Fed. R. Civ. P. 26(a)(2).

Judge Lopez's March 9, 2020 Order set the following expert disclosure dates: (1) an August 28, 2020 deadline to designate expert witnesses; and (2) an October 13, 2020 deadline to serve expert reports. Dkt. No. 33. Consistent with this Order, on August 28,

2020, Defendants served Plaintiff with their Initial Expert Designation identifying Mr. Sanchez as its use of force expert, summarizing his expected testimony, and attaching a copy of his curriculum vitae listing his qualifications. Dkt. No. 66 at 18–36. Then, on October 13, 2020, Defendants served Plaintiff with Mr. Sanchez's expert report. Dkt. No. 67-1 at 6–7, ¶ 27, pp. 131–167 (Ex. P). Both disclosures were timely, and the Court finds nothing in either that is so lacking as to warrant sanctions.

**D. The Court Declines to Award Sanctions in Favor of Defendants.**

Defendants seek sanctions against Plaintiff for having to respond to this Motion, which Defendants characterize as "groundless." Dkt. No. 67.[4] Defendants seek sanctions in the amount of $6,032.50, which is based upon a "reasonable hourly rate" of $475.00 per hour for the time Defendants' counsel spent responding to this Motion. *Id.*, Dkt. No. 67-1 at 11.

Because Plaintiff brought this Motion in part under Fed. R. Civ. P. 37, the Court "must . . . require the movant, the attorney filing the motion, or both, to pay the party who opposed the motion any reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion to compel was substantially justified, or if other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B); *see also Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC(RMI), 2019 WL 5720731, at *4, *12 (N.D. Cal. Nov. 5, 2019) (declining to impose sanctions on the unsuccessful moving party after finding other circumstances made such an award unjust where neither party was "entirely blameless" with respect to the parties' discovery issues).

The Court declines to order Plaintiff to pay Defendants' attorney's fees. Rule 37(a)(5)(B) only allows reimbursement of expenses and attorney's fees that a party "incurred." *See Johnson v. Runnels*, No. 04-cv-0776-LKK-EFB-P, 2010 WL 760712, at

---

[4] Defendants also seek sanctions based upon alleged unprofessional conduct by Plaintiff's counsel. Because this conduct is the subject of the Court's pending Order to Show Cause (Dkt. No. 70), the Court does not address it here.

\*2, \*5-6 (E.D. Cal. Mar. 4, 2010) (finding a pro se plaintiff was not entitled to attorney fees under Rule 37 because this expense was not actually incurred). Defendants' submission does not establish what expenses or costs (if any) Defendants actually incurred responding to Plaintiff's Motion. Instead, Defendants proffer, in conclusory terms, what a reasonable fee would be based on the amount of the time Defendants' counsel spent responding to the Motion. Dkt. No. 67-1 at 11, ¶ 53.  This is insufficient to establish what, if any, expenses Defendants incurred in responding to this Motion. Therefore, the Court denies Defendants' request for sanctions.

## IV.   Conclusion

Based on the foregoing, the Court DENIES Plaintiff's Motion for Sanctions and finds no basis to award Defendant any expenses for opposing this Motion.

**IT IS SO ORDERED**.

Dated:  May 18, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge