UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS BARAJAS CENTENO,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF CARLSBAD, et al.,<br><br>        Defendants. | Case No.: 19-cv-2098-L (DEB)<br><br>**ORDER IMPOSING SANCTIONS ON GENARO LARA, ESQ.** |

## I. INTRODUCTION

On November 10, 2020, the Court issued an Order to Show Cause directing Plaintiff's attorney Genaro Lara to explain why the Court should not sanction him for statements made in two letters he sent to Defendants' counsel Daniel Stephen Modafferi. Dkt. No. 70. On January 11, 2021, the Court held a hearing on the Order to Show Cause. Dkt. Nos. 96, 103. Prior to the hearing, Lara submitted a brief, declaration, and evidence responding to the Order to Show Cause. *See* Dkt. No. 88.

Upon consideration of the information before the Court, the Court sanctions Lara $1,000 ($500 per letter) and refers him to the District's Standing Committee on Discipline to investigate Lara's fitness to practice law in this District and determine whether additional discipline is appropriate.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jose Luis Barajas Centeno alleges Defendants City of Carlsbad and individual police officers violated his civil rights by using excessive force in connection with an investigative detention. During discovery, Lara alleged Modafferi mocked Lara's hearing disability during Plaintiff's deposition. Lara also alleged Defendants altered videos depicting the alleged excessive force. The conduct at issue in this Order arises out of two letters Lara sent to Modafferi regarding these allegations.

### A. Plaintiff's Deposition (September 17, 2020 Letter)

On July 22, 2020, Modafferi took Plaintiff's deposition. Dkt. No. 67-1 at 7, Modafferi Decl. ¶ 31.[1] Early in the deposition, Plaintiff accused the court reporter and interpreter of mocking him. *Id.* at 178, Ex. T. The interpreter denied the accusation and explained she smiled at the court reporter because they thought it was "cute" that the interpreter pulled down her mask so the court reporter could accurately transcribe Plaintiff's responses. *Id.*

The following morning (on July 23, 2020), Plaintiff allegedly told Lara that Modafferi, the interpreter, and the court reporter mocked Lara's hearing disability by making signs and pointing to their ears when Lara was not looking. Dkt. No. 88 at 37. That same day, Lara sent Modafferi an email accusing Modafferi, the interpreter, and the court reporter of "mocking me with facial gestures and hand signals to each other, and pointing your (plural) hands toward me." Dkt. No. 67-1 at 181, Modafferi Decl., Ex. U. Modafferi immediately replied with a denial:

> I assure you that I never mocked or otherwise made gestures or signals to or about any person at any time during the deposition. Indeed, it would have been impossible for me to have made any facial gestures even if I had wanted to (which I did not), considering that I was wearing a mask over my face throughout the entire proceeding. To the extent Mr. Centeno believes that he

---

[1] The Court's citations to the docket refer to the page numbers assigned by the Court's CM-ECF system.

perceived any such attempt at mocking, he has entirely misinterpreted my actions, and his assumptions about my intent are incorrect.

*Id.*

The court reporter corroborated Modafferi's denial in a declaration:

I have been informed that plaintiff's attorney, Genaro Lara, has accused me, Mr. Modafferi, and Ms. Nickerson [the interpreter] making fun of him by pointing to our ears. I did not observe anyone in that deposition of making fun of Mr. Lara or anyone else. I did not engage in the behavior I am accused of, and I did not observe Ms. Nickerson or Mr. Modafferi engaging in any mocking of Mr. Lara.

Dkt. No. 67-2, Turner Decl.

On September 17, 2020, Lara sent a letter to Modafferi regarding the alleged mocking. Dkt. No. 67-1 at 184, Modafferi Decl., Ex. V. The letter is captioned "Centeno v. City of Carlsbad, Jordan Walker, et al, Meet and confer on motion for sanctions for violation of discovery rules, motion to dismiss, motion to reset discovery dates." *Id.* In his discussion of the meet and confer topics, Lara wrote:

> To top it all off, your disgusting mockery of my hard of hearing condition during the deposition of Mr. Centeno on August 7, 2020, best describes you for what you are, a low class thug, a disgrace to the human race. I will not lower myself to add more appropriate epithets to your disgraceful unprofessional misconduct. I believe in the rule of law and will abstain from physical conduct, except in self defense. I warn you to abstain from crossing the line of attacking me physically. Your size means nothing to me. I will defend myself with whatever means are necessary to repel any unprovoked physical attacks and aggression against me. Your denial of my accusation is not credible and fails to explain your actions together with those of the participants in the charade of mocking me; your actions, together with those of the court reporter and the Spanish/English interpreter. Therefore, not only is your mocking of my disability un-refuted, but your denial affirms and confirms you as an unmitigated liar, and a cheat.

[…]

Respectfully,

Genaro Lara

*Id.* at 184–85, Ex. V.

### B. Plaintiff's Allegation of Evidence Tampering (October 20, 2020 Letter)

On May 28, 2020, Defendants produced video recordings (including body worn camera footage) of the events at issue in this case. Dkt. No. 67-1 at 5, Modafferi Decl. ¶ 20; *id.* at 39, Ex. H.

On June 1, 2020, Lara sent a meet and confer letter to Modafferi. Dkt. 67-1 at 41–43, Modafferi Decl., Ex. I. Among other things, Lara claimed he "suspect[s] that the video recordings provided were redacted, edited and otherwise tampered with." *Id.* at 42.

On June 5, 2020, Modafferi sent Lara a letter denying any tampering. Dkt. No. 67-1 at 45, Modafferi Decl., Ex. J ("None of the videos or audio recordings that were produced have been redacted, edited, or otherwise tampered with."). On August 14, 2020, the Court held a Discovery Conference after Defendants did not produce chain of custody documentation for the video recordings Lara claims are altered. Dkt. No. 56. Defendants produced the chain of custody documentation later that day. Dkt. No. 67-1 at 6, Modafferi Decl. ¶ 25, pp. 73–109, Ex. N.[2]

On October 20, 2020, Lara sent another meet and confer letter to Modafferi. Dkt. No. 67-1 at 187, Modafferi Decl., Ex. W. The letter is captioned "Centeno v. City of Carlsbad, Jordan Walker, et al, 3:19-cv-02098 Meet and Confer re: Defendants' violation of Rule 26(a)(2)(A)(B), and FRCP Rule 3737(c)(1), Motion for Sanctions." *Id.* Lara

---

[2] On October 11, 2020, Lara, on Plaintiff's behalf, filed a Motion for Sanctions for the alleged evidence tampering. Dkt. No. 66. On May 18, 2021, the Court denied the Motion, finding no evidence that any tampering occurred. Dkt. No. 130.

objected to Defendants' expert designation, threatened to file a motion for sanctions, and again complained about the alleged mocking of Lara at Plaintiff's deposition and the alleged evidence tampering. The letter concluded:

> Pending your response to my concerns that either you or others acting in concert with your actions, have deliberately conspired to alter, tamper, edit, and or manipulate video recordings, thereby violating criminal state laws and Jordan Walker's criminal conduct in committing criminal assaults upon a disabled, handicapped and senior citizen, in a hate crime, all of which will have to be confronted in due course by the judicial system, we will address all of these items in due course and others, in the appropriate forum. Not the least which will have to be addressed in your misconduct in making a mockery of the judicial system during the deposition of Mr. Centeno on July 22, 2020, when you, the court reporter and the interpreter, engaged in making fun of my hearing deficiency for two to three hours straight. Your reckless, base, ignoble, conduct is manifest evidence of the low class, vulgar, crass, nature of your origin, and the lack of respect you hold the United States District Courts.
>
> Sincerely,
>
> Genaro Lara *[signature]* //SS// *[signature]*

*Id.* at 187–88.

### C. The Court's Order to Show Cause

The Court learned of Lara's September 17 and October 20, 2020 letters in Defendant's Opposition to Plaintiff's Motion for Sanctions, filed on October 26, 2020. Dkt. No. 67. On November 10, 2020, the Court issued the following Order to Show Cause:

> In his letter dated September 17, 2020 and addressed to Daniel Modafferi, Esq., Plaintiff's counsel Genaro Lara, Esq. impliedly threatens Mr. Modafferi with physical violence, calls him a "low class thug," a "disgrace to the human race," and an "unmitigated liar and a cheat." Dkt. No. 67-1 at 184–85, Modafferi Decl., Ex. V. Mr. Lara's letter dated October 20, 2-20, accuses Mr. Modafferi "or others acting in concert with [him]" of deliberately tampering with evidence and states Mr. Modafferi's "reckless, base, ignoble, conduct is manifest evidence of the low class vulgar, crass, nature of [his] origin…." *Id.* at 187–88, Ex. W.

> Based on the foregoing, Mr. Lara is ORDERED to appear in person on **December 4, 2020**, at **9:30 a.m.** and SHOW CAUSE why sanctions should not be imposed under Local Civil Rule 2.2.a for violation of Local Civil Rules 2.1.a.3.a ("[w]e expect lawyers to address legal arguments with other lawyers professionally, and not personally") and 2.1.a.3.b ("[w]e expect lawyers to treat adverse witnesses, litigants and opposing counsel with courtesy, fairness and respect").
>
> . . .
>
> Prior to the SHOW CAUSE HEARING, and no later than **November 23, 2020**, Mr. Lara shall file and serve a brief and supporting declaration responsive to this Order to Show Cause.

Dkt. No. 70.

At Lara's request, the Court continued the hearing on the Order to Show Cause from December 4, 2020 to January 11, 2021. Dkt. No. 78.[3]

On December 24, 2020, Lara filed Plaintiff's Counsel Response to OSC. Dkt. No. 88. Lara neither expressed regret over nor backed away from his personal attacks on Modafferi. Instead, Lara explained his "comments about Modafferi's low class and a disgrace of the human race . . . were personal opinions based on Modafferi's lack of professionalism in mocking me, and his misrepresentations which have been alluded to." Dkt. No. 88-2 at 6. Lara's Response described Modafferi as "arrogant, abusive," and "uncivilized and abusive." Dkt. No. 88-2 at 8; Dkt. No. 88 at 9–10. Lara also wrote that Modafferi lied by describing Defendant's use of force expert (who is a retired Chief of Police) as "Chief of Police" and compared Modafferi to a Nazi: "The technique of parroting

---

[3] On December 11, 2020, in response to communications from the parties, the Court held a status conference to clarify the authority under which the Court's OSC was issued and notify the parties that the Court would not entertain testimony at the January 11, 2021 hearing. Dkt. No. 97; *see also* Dkt. No. 84 (Order Following Status Conference and Clarifying Order to Show Cause).

a lie continuously is a Nazi propaganda custom practiced by Goebbels, a Nazi thug." Dkt. No. 88-2 at 3.[4]

On January 11, 2021, the Court held a hearing on the Order to Show Cause. Dkt. No. 96. By the time of the hearing, almost three months had passed since Lara wrote the letters in question. Although acknowledging that his client was taking medication for a mental health condition (Dkt. No. 103 at 24), and having received the court reporter's declaration providing a benign explanation for what occurred at the deposition (Dkt. No. 67-2), Lara was not open to the possibility that his client might have misinterpreted what occurred. Lara also expressed no regret for anything he wrote in the September 20, 2020 and October 17, 2021 letters. Dkt. No. 103 at 27 ("I stand by my words."). Instead, referring to Modafferi, Lara stated, "[a]ny individual that makes fun, especially makes fun in a legal proceeding, it's a person of low class, vulgar, cheap, totally abhorrent to my – to my value system that I – that I hold, that I practice." *Id.*; *see also id.* at 24, ("to engage in that behavior is a person of low class, vulgar, crass"). Lara also stated that Modafferi "lies, misrepresents the facts, and he is a cheater, in my opinion . . . ." *Id.* at 28.

### III. DISCUSSION

#### A. The Court's Authority to Sanction

All attorneys practicing before this Court are subject to the Court's Code of Conduct on Professionalism. *See* CivLR 2.1(a). Local Rule 2.1 governs "Professionalism." Local Rule 2.1(a) states:

> a. **Code of Conduct.** The following Code of Conduct establishes the principles of civility and professionalism that will govern the conduct of all participants in cases and proceedings pending in this Court. It is to be construed in the broadest sense and governs conduct relating to such cases and

---

[4] *See also* Dkt. No. 88-2 at 2 (stating "defense counsel lied as a matter of course as normal custom and habit, shamelessly and without remorse."); *id.* at 5 (referring to Modafferi as "a person with low education, bad manners, or no manners, one who has no respect for deaf or old people with disabilities.").

proceedings, whether occurring in the presence of the Court or occurring outside of the presence of the Court. This Code of Conduct is not intended to be a set of rules that lawyers can use to incite ancillary litigation on the question of whether the standards have been observed, but the Court may take any appropriate measure to address violations, including, without limitation, as set forth in Civil L. Rule 2.2.

The Court's "Principles of Civility" are set out in Local Rule 2.1(a)(1). Of relevance here, that Rule states:

> This court is committed to ensuring that all who work within it and come before it treat each other with decency, dignity, and respect. As such, the Court expects that all who practice in this court will adhere to this Code of Conduct in all of their interactions within the courts of this judicial district, in order to nurture, rather than tarnish, the practice of law and to maintain the public's faith in the legitimacy of our judicial system.

Local Rule 2.1(a)(3) list specific "Duties Owed to Other Lawyers, Parties and Witnesses." The first two duties are:

> a) We expect lawyers to address legal arguments with other lawyers professionally, and not personally.
>
> b) We expect lawyers to treat adverse witnesses, litigants and opposing counsel with courtesy, fairness and respect.

Local Rule 2.2.a. ("Discipline") authorizes the Court to sanction violations of Rule 2.1. *Accord Zambrano v. City of Tustin*, 885 F.2d 1473, 1477 (9th Cir. 1989) ("We have consistently upheld the power of the district court to sanction attorneys for violations of local rules.").

The Court also has "inherent authority to sanction miscreant attorneys." *Zambrano*, 885 F.2d at 1478. This authority "derive[s] from the absolute need of a trial judge to maintain order and preserve the dignity of the court." *Id.* The Court must exercise this power with "restraint and discretion" and only "upon a finding of bad faith . . . ." *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–66 (1980)).

### B. Sanctions are Necessary and Appropriate to Address Lara's Uncivil and Unprofessional Conduct

The Court invokes Local Rule 2.1 and 2.2 and its inherent powers to sanction Lara $1,000 ($500 for his September 17, 2020 letter and $500 for his October 20, 2020 letter).[5] The Court also refers Lara to the District's Standing Committee on Discipline to investigate Lara's fitness to practice law in this District and determine whether additional discipline is appropriate. These sanctions are both necessary and appropriate considering the vitriolic and highly personal nature of conduct at issue.

In two letters sent one month apart in September and October 2020, Lara called Modafferi a "low class thug," a "disgrace to the human race," an "unmitigated liar and a cheat," and wrote his "reckless, base, ignoble, conduct is manifest evidence of the low class, vulgar, crass, nature of [his] origin . . . ." Dkt. No. 67-1 at 184–85, Modafferi Decl., Ex. V; *id.* at 187–88, Ex. W. Lara's letters were motivated by his belief that Modafferi mocked him at Plaintiff's deposition and that Defendants altered the videos of the incident at issue in this lawsuit. When he wrote the letters, Lara was aware of Modafferi's, the interpreter's, and the court reporter's benign explanation for what occurred at Plaintiff's deposition. Dkt. No. 67-1 at 178, Modafferi Decl., Ex. T; *id.* at 181, Ex. U. Lara also knew Modafferi emphatically denied the videos were altered in any way. *Id.* at 45, Ex. J. Rather than acknowledging a possibility that he and his client may have misperceived what occurred, Lara responded to these denials with additional disparagement of Modafferi and, in his Response to the OSC, Lara described Modafferi as an "unmitigated liar" like "Goebbels, a Nazi thug." Dkt. No. 88-2 at 3–4.

---

[5] Even if Local Rule 2.1 did not squarely address Mr. Lara's conduct, the Court invokes its inherent powers to fill any gaps. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (Statutes and rules, "taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. . . . [T]he inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.").

Lara's personal attacks on opposing counsel have no place in the practice of law or in any civil discourse. No attorney should call another a "low class thug," or a "disgrace to the human race." Neither should an attorney have the "nature of [his] origin" characterized as "low class," "vulgar," or "crass."

The Court does not hesitate to find Lara acted willfully, in bad faith, and with reckless disregard for basic norms of dignity and professionalism. Lara's missives are vitriolic, hate-filled, and degrading personal attacks that can neither redress the perceived transgressions that motivated them nor allow for any possibility of a working relationship between counsel going forward.

And the results are predictable: Modafferi is fearful of Lara (Dkt. No. 67-1 at 9, Modafferi Decl. ¶ 38), refuses to be in the same room with Lara, and insists on communicating with Lara only in writing (*id.*; Dkt. No. 128-1 at 3). The resulting breakdown of the working relationship between counsel, imposing increased cost to the parties, delay in resolving the litigation on the merits, and an increased burden on the Court is the inevitable result of uncivil and unprofessional conduct of the type at issue here.[6]

Lara has shown no compunction about his caustic statements. To the contrary, he has continued to attack Modafferi's character despite knowing the Court was contemplating sanctions for his prior statements. On April 13, 2021, Lara sent correspondence (incorrectly dated April 13, 2019) to City of Carlsbad Mayor Matt Hall in which he wrote:

---

[6] Since Plaintiff's deposition, the parties have filed ten discovery or other contested non-dispositive pre-trial motions, including Defendants' Motion to Disqualify Mr. Lara (Dkt. Nos. 66, 66-2, 71, 73, 74, 94, 108, 115, 118, and 128); and the Court has held four Discovery Conferences attempting to mediate discovery disputes between the parties (Dkt. Nos. 56, 63, 113, and 144).

> The other issue is that one of your lawyers, Daniel S. Modafferi, who defends the city of Carlsbad, is an arrogant, abusive, vindictive and cowardly creep, ridiculed Mr. Centeno's counse's poor hearing in open proceeding and in flagrant disregard for professional rules of conduct, and in the most disrespectful and low class manner. His illegal, unethical, unprofessional, vulgar and crass behavior is reprehensible, despicable and unwelcome in a civilized society. The reason for Modafferi's misconduct in ridiculing an attorney was that Mr. Centeno's counsel apologized before the commencement of the legal proceeding that he might request a read back to his difficulty with hearing. I request this letter to be read in the city council public hearings. Thank you.
>
> If this notice is ignored, please be advised that evil will not go unpunished, sooner or later.
>
> Respectfully,
>
> Genaro Lara *[signature]*

Dkt. No. 128-2 at 44, Modafferi Decl., Ex. M.

The Court is mindful that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Lara's conduct, however, is such an egregious breach of the standards of civility and professionalism that the failure to sanction the conduct would constitute an abdication by the Court. For these reasons, the Court sanctions Lara $1,000 ($500 per letter) under Local Rules 2.1 and 2.2 and the Court's inherent powers. Lara must remit this sanction directly to Modafferi in compensation for the degrading personal attacks. While the emotional distress Lara caused is not readily quantifiable, this sanction is designed to compensate Modafferi for the distress that would naturally flow from the receipt of such personal, vitriolic, and degrading written attacks. The Court also refers Lara to the District's Standing Committee on Discipline to investigate his fitness to practice law in this District and determine whether additional discipline is appropriate.

The sanctions imposed here are both reasonably necessary to deter Lara from further personal attacks on Modafferi and "proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power." *Zambrano*, 885 F.2d at 1480; *cf. United States v. Cleveland*, No. 96-cr-0207, 1997 WL 539664, at *1 (E.D. La.

Aug. 27, 1997) (sanctioning counsel $7500, under the court's inherent powers, for stating "[i]f you want to stop being a U.S Attorney for one afternoon, I'll whip your ass" to opposing counsel during a sidebar and making a finding of bad faith based on the fact that counsel knew better).

### C. Lara's Procedural Objections are Unfounded

Lara raised several procedural challenges to the Order to Show Cause, including: (1) the undersigned should recuse himself (Dkt. No. 88 at 2–3); (2) the Order to Show Cause is a contempt proceeding lacking procedural safeguards (*id.* at 3–5); and (3) his opinions about Modafferi (e.g., that Modafferi is an "unmitigated liar") are protected by the litigation privilege and California's Anti-SLAPP statute (*id.* at 5, 9–10). The Court addresses each argument in turn.

#### 1. Recusal

Lara's recusal argument claims the Court "indicated an intent to punish" without first "learn[ing] the facts and allow[ing] a fair hearing." Dkt. No. 88 at 2. As explained at the December 11, 2020 Status Conference and again at the January 11, 2021 hearing, however, the Court issued the Order to Show Cause to initiate an inquiry. Dkt. No. 97 at 7–9; Dkt. No. 103 at 19–20. The Court had not decided whether to impose sanctions and it provided Lara an opportunity to respond, submit evidence, and be heard at a hearing. Dkt. No. 97 at 7–9, 12–13, 15. There is no basis for recusal.

#### 2. Contempt Proceeding

Lara also argues the Court provided inadequate notice and procedures for criminal contempt sanctions. Dkt. No. 88 at 3–4. The Court has made clear "the Order to Show Cause is not a contempt proceeding." Dkt. No. 97 at 3. The Order to Show Cause itself and the Court's Order following the December 11, 2020 Status Conference made clear that it is proceeding to determine whether the Court should impose sanctions under Local Rule 2.1 and the Court's inherent powers. To satisfy the requirements of due process in this context, the attorney must receive prior notice of the "the particular alleged misconduct

12

19-cv-2098-L (DEB)

and of the particular disciplinary authority under which the court is planning to proceed" along with an opportunity to respond. *In re DeVille*, 361 F.3d 539, 548 (9th Cir. 2004).

Lara was specifically informed which statements were the subject of the Order to Show Cause and that the Court was contemplating sanctions pursuant to Local Rules 2.1.a.3.a. and 2.1.a.3.b. and its inherent authority. Dkt. Nos. 70, 84. Lara was provided an opportunity to respond to the Order to Show Cause in writing and during the hearing before the Court. Dkt. Nos. 88, 96. This is sufficient due process for the $1,000 monetary sanction imposed herein.

### 3. Conduct not Directly Before the Court

Lara also contends sanctions are not appropriate because he did not make the statements about Modafferi's character before the Court. Dkt. No. 88 at 4–5. This argument lacks legal support. Lara violated Local Rules 2.1.a.3.a. and 2.1.a.3.b. "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Chambers*, 501 U.S. at 57.

### 4. Litigation Privilege/Anti-SLAPP Statute/Ancillary Litigation

Finally, contrary to Lara's arguments (Dkt. No. 88 at 5, 9–10), neither the litigation privilege nor California's Anti-SLAPP statute protect attorneys from sanctions for unprofessional conduct. Instead, the litigation privilege protects individuals from derivative "tort liability" arising out of conduct occurring during litigation. *Silberg v. Anderson*, 786 P.2d 365, 370–71 (1990). The litigation privilege's "principal purpose . . . is to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Id.* at 369. Court-imposed sanctions are not derivative tort actions.

The Anti-SLAPP statute provides that a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike . . . ."

13

Cal. Civ. Proc. Code § 425.16. The Court's Order to Show Cause is not a "cause of action" and Lara's letters to Modafferi are not "public issues."

Similarly, Lara's argument that the undersigned "has taken up Daniel S. Modafferi's . . . ancillary litigation" (Dkt. No. 88 at 6) is unavailing because the Order to Show Cause was not initiated by Modafferi. It also is not an ancillary case, but, instead, a proceeding arising out of Lara's conduct while litigating this case.

## IV.  CONCLUSION

For the foregoing reasons, the Court:

1. Sanctions Lara $500 for his September 17, 2020 letter;

2. Sanctions Lara $500 for his October 20, 2020 letter;

3. Orders Lara to pay the $1,000 in sanctions imposed by this Order to Daniel S. Modafferi on or before **July 16, 2021**.

4. Refers Lara to the District's Standing Committee on Discipline to investigate Lara's fitness to practice law in this District and determine whether additional discipline is appropriate; and

5. Pursuant to Cal. Bus. & Prof. Code §6068(o)(3), orders Lara to report the sanctions imposed by this Order to the California State Bar no later than **August 2, 2021**.

**IT IS SO ORDERED.**

Dated: July 2, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge