UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE LUIS BARAJAS CENTENO,

Plaintiff,

v.

CITY OF CARLSBAD, et al.,

Defendants.

Case No.:  3:19-cv-2098-L-DEB

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court is the parties' cross-motions for summary judgment. (ECFs 116, 158, 159, and 162). The Court decides the matter on the papers submitted without oral argument. *See* Civ. L. R. 7.1. For the reasons stated below, the Court **DENIES** Plaintiff's motion, and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I.      BACKGROUND

This action relates to a police incident involving Plaintiff Jose Luis Barajas Centeno ("Centeno") that occurred in the City of Carlsbad ("Carlsbad").

On April 27, 2019, Carlsbad residents observed someone attempting to gain access to a vehicle with something that resembled a coat hanger. There were recent reported car burglaries in that area. The residents therefore called Carlsbad's Police Department to report the possible crime.

Carlsbad police officers—Defendants Jordan Walker ("Walker") and James Gallivan ("Gallivan") (collectively, "Officer Defendants")—responded to the report.

Upon arrival, they observed a vehicle matching the report and Centeno attempting to open it using a metal tool and flashlight.

Walker approached Centeno and asked him to put down the metal tool. Centeno placed it on top of the vehicle. After that, they engaged in a verbal exchange. Walker asked for identification and vehicle registration. Centeno stated he did not have that. Walker informed him there was a report about a possible vehicle burglary. He responded it was his vehicle. Walker asked for evidence to show ownership or authorization to access the vehicle. Centeno again stated it was his vehicle.

During this exchange, Gallivan approached Centeno from the other side. Gallivan grabbed the metal tool and threw it about ten feet behind him. After Centeno asked why he did that, Gallivan stated he did not want him to grab it. Centeno then attempted to walk past Gallivan. In response, Gallivan moved into Centeno's path, held out his hand, and told him to remain there. Centeno stepped backward.

Walker then said he was detaining Centeno and grabbed his arms to handcuff him. Walker realized Centeno was still holding the flashlight and said, "Put the flashlight down." Centeno responded, "What?" Walker repeated, "Put the flashlight down." It is unclear when Centeno dropped the flashlight, but it happened shortly after Walker grabbed him.

Officer Defendants contend Centeno resisted Walker's attempt to handcuff him. Centeno disputes that. Officer Defendants then took Centeno to the ground. Centeno was instructed to put his hands behind his back three times. Officer Defendants contend Centeno resisted by keeping his arms rigid and his right arm pinned under his torso. Centeno contends he did not resist. Gallivan held Centeno's left hand and placed his arm on Centeno's neck. Walker struck Centeno's back with his knee at least two times. After that, Centeno was handcuffed and placed in an upright position. The investigation continued.

1
2
3

Eventually, Walker issued Centeno a written citation for a misdemeanor: resisting, delaying, or obstructing a peace officer in the lawful exercise of their duties. Officer Defendants released Centeno after he agreed to appear in court at a designated time.

4
5
6
7

A misdemeanor complaint was filed against Centeno. The court order from the arraignment hearing indicates Centeno failed to appear. Centeno contends he attended it. The order also indicates the prosecutor voluntarily dismissed the complaint. Centeno thereafter initiated this civil rights action.

8

## II.    LEGAL STANDARD

9
10
11
12
13

Summary judgment is appropriate where the record, taken in the light most favorable to the nonmoving party, indicates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986).[1]

14
15
16
17

To meet their burden, the moving party must present evidence that negates an essential element of the opposing party's case or show that the opposing party does not have evidence necessary to support its case. *Celotex*, 477 U.S. at 322-23; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).

18
19
20
21
22
23
24
25

If the moving party meets this burden, the nonmoving party must support their opposition by producing evidence in support of the claim. *Celotex Corp.*, 477 U.S. at 324; *Nissan Fire & Marine Ins.*, 210 F.3d at 1103. They cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.")

26
27
28

---

[1] Unless otherwise noted, all citations, quotation marks, and brackets are omitted.

Facts are material when, under the substantive law, they could affect the outcome. *Anderson*, 477 U.S. at 248. Disputes about material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008).

When ruling on summary judgment motions, courts must view all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. They do not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255.

The court "may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). That is, courts are not required "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Cross-motions for summary judgment "must be considered on [their] own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001); *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019). Courts must review the evidence submitted in support of each cross-motion, and "give the nonmoving party in each instance the benefit of all reasonable inferences." *Americans Civil Liberties Union of Nevada v. City of Las Vegas*, 466 F.3d 784, 791 (9th Cir. 2006); *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

Plaintiffs "seeking summary judgment on a claim must offer evidence sufficient to support a finding upon every element of [their] claim other than elements admitted by the defendants." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018). "It is ordinarily a heavy burden." *Id*. at 538.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

4

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018).[2]

## III.   DISCUSSION

Centeno asserts claims under section 1983 against Officer Defendants for unlawful detention or arrest, excessive force, and malicious prosecution. He also asserts a related *Monell* claim against Carlsbad. And he asserts various state law claims against all Defendants.

Officer Defendants argue they are entitled to qualified immunity as to the section 1983 claims. When that defense is raised, courts must determine: (1) whether the officer violated a constitutional right, and (2) whether that right was "clearly established" when the incident occurred. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what [they] [are] doing violates that right. [That is], existing precedent must have placed the . . .  constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). An officer is immune "unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (*per curiam*). The law cannot be defined "at a high level of generality." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *White v. Pauly*, 137 S. Ct. 548 (2017); *see, e.g.*, *S. B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) ("we hear the Supreme Court loud and clear. Before a court can impose liability on [an officer], we must identify

---

[2] Defendants requested leave to file video evidence. (ECF 116-4). The Court **GRANTS** their request.

precedent as of [the incident] that put [the officer] on clear notice that [their conduct] in these particular circumstances would be [unconstitutional].") Centeno has the burden to show the right at issue was clearly established. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017); *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

When ruling on a summary judgment motion, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the" nonmoving party. *Scott*, 550 U.S. at 378.[3] "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Id*.; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991) (summary judgment based on qualified immunity is appropriate only if the officers are entitled to judgment on the basis of the facts most favorable to plaintiff).

The Court will address whether Officer Defendants are immune from Centeno's 1983 claims.

### *Unlawful Detention Claim*

The Fourth Amendment protects individuals "against unreasonable . . . seizures." U.S. Const. amend. IV. "There are two categories of police seizures under the Fourth Amendment: [detentions] and . . . arrests." *Hernandez v. Skinner*, 969 F.3d 930, 937 (9th Cir. 2020). Both are at issue here.

First, Centeno asserts an unlawful detention claim against Officer Defendants. "Police officers may conduct a brief, investigative stop of an individual when they have

---

[3] Officer Defendants rely on their expert witness to support the summary judgment motion. The witness, however, did not view the evidence, including the videos, in the light most favorable to Centeno nor draw all reasonable inferences in his favor. (*See, e.g*. Defendants' Exhibit D at 18) ("while on the ground, Mr. Barajas-Centeno allegedly kept his arms rigid and concealed under his body.") The report also relies on disputed material facts, like whether Centeno resisted Officer Defendants' lawful commands. The Court thus has not relied on the expert in deciding Defendants' summary judgment motion. Moreover, upon reviewing the evidence, the Court overrules all evidentiary objections without prejudice.

reasonable suspicion that the person apprehended is committing or has committed a criminal offense." *Id*.; *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

"The reasonable suspicion standard is a less demanding standard than probable cause, and merely requires a minimal level of objective justification." *Gallegos v. City of Los Angeles*, 308 F.3d 987, 990 (9th Cir. 2002); *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) ("the reasonable suspicion standard is not a particularly high threshold to reach.") Police officers must have "specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (*en banc*). Courts must consider all the circumstances to determine whether an officer had reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

There is no dispute Centeno was detained. But the parties fail to address when the detention commenced. The Court first turns to this issue.

Officer Defendants, wearing standard police uniforms, arrived at the scene in marked police cars. They surrounded Centeno near the vehicle and asked him several questions. Then, when Centeno attempted to walk around, Gallivan moved into his path, held out his hand, and told Centeno to remain in place. Viewing the evidence in the light most favorable to Centeno and drawing all reasonable inferences in his favor, the detention started at this point. *See Terry*, 392 U.S. at 19 n.16 (seizures occur when police officers, through force or authority, restrain an individual's liberty); *INS v. Delgado*, 466 U.S. 210, 215 (1984) (consensual encounter between a police officer and a citizen can be transformed into a seizure where a reasonable person would have believed they were not free to leave.); *Fla. v. Bostick*, 501 U.S. 429, 437 (1991) ("no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search . . . so long as the officers do not convey a message that compliance with their requests is required."); *United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) (seizure occurred when officer ordered individual to stand up and turn around).

When that happened, Officer Defendants had reasonable suspicion to detain Centeno. Carlsbad Police Department received a report that an individual with a metal object was attempting to gain access to a vehicle at night. Officer Defendants responded to the report. They observed Centeno with a metal tool and a flashlight, items often used for vehicle burglaries, attempting to open the passenger side door with the metal tool. Although Centeno stated it was his vehicle, he did not provide identification or documentation to support that assertion. Centeno's other statements also did not dispel Officer Defendants' reasonable suspicion.[4] Under these circumstances, it was reasonable for Officer Defendants to order Centeno not to move while they investigated his right to access the vehicle (*e.g.*, title or permission from the registered owner).

In sum, viewing the evidence in the light most favorable to Centeno and drawing all reasonable inferences in his favor, any reasonable jury would conclude Officer Defendants had reasonable suspicion to detain Centeno. His claim of detention without reasonable suspicion therefore fails.

### *Unlawful Arrest Claim*

Centeno also asserts an unlawful arrest claim against Officer Defendants. The Court must determine (1) when the arrest occurred, and (2) whether probable cause existed at that time. *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001) (police officers need probable cause to make warrantless arrests).

There is no dispute Centeno was arrested. But, as with the detention, the parties do not address when the arrest occurred. The Court first turns to this issue.

---

[4] Centeno argues he was unable to understand Officer Defendants because he is not fluent in English. But he fails to cite evidence to show Officer Defendants – or objectively reasonable officers in their situation – should have known that. The record shows the opposite. Defendants provided video footage from the incident. (*See* Defendants' Exhibits A and B). In the videos, Centeno provided direct answers to Officer Defendants' questions. (*Id.*) (stating Officer Defendants should have known it was his vehicle because it was not theirs).

Again, Centeno was detained when Gallivan told him not to move. The relevant issue is when the detention transformed into an arrest. *Michigan v. Summers,* 452 U.S. 692, 700 (1981) ("every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."); *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) ("a seizure becomes unlawful when it is more intrusive than necessary."); *Kraus v. Pierce Cnty.*, 793 F.2d 1105, 1108 (9th Cir. 1986) ("investigative stops based upon suspicion short of probable cause are . . . constitutionally permissible only where the means utilized are the least intrusive reasonably available."); *Washington v. Lambert*, 98 F.3d 1181, 1185, 1188-1189 (9th Cir. 1996) (intrusive techniques might turn a stop into an arrest).

To determine whether and when an investigative detention transforms into an arrest, the Court must consider all the circumstances, including two main components:

> First is the intrusiveness of the stop, *i.e.*, the aggressiveness of the police methods and how much the plaintiff's liberty was restricted. Under this component, [courts] review the situation from the perspective of the person seized, assessing whether a reasonable innocent person in these circumstances would . . . have felt free to leave after brief questioning. Second is the justification for the use of such tactics, *i.e.*, whether the officer had sufficient basis to fear for [their] safety to warrant the intrusiveness of the action taken. This inquiry is undertaken . . . from the perspective of law enforcement, while bearing in mind that the purpose of a [detention] is to allow the officer to pursue [their] investigation without fear of violence.

*United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014); *Lambert*, 98 F.3d at 1188-1189; *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001) (courts "allow intrusive and aggressive police conduct without deeming it an arrest … when it is a reasonable response to legitimate safety concerns."); *Haynie v. Cnty. of Los Angeles*, 339 F.3d 1071, 1077 (9th Cir. 2003) ("a brief, although complete, restriction of liberty, such

as handcuffing, during a *Terry* stop is not a de facto arrest, if not excessive under the circumstances.") There is no bright-line rule. *Lambert*, 98 F.3d at 1185.[5]

First, Walker's actions – grabbing Centeno's arms to handcuff him without any warning or explanation[6] – significantly increased the intrusiveness of the detention and severely restricted Centeno's liberty. It is uncommon to use restrains like that during routine investigative detentions. *Florida v. Royer*, 460 U.S. 491, 500 (1983) ("investigative methods [used] should be the least intrusive means reasonably available."); *Lambert*, 98 F.3d at 1187 ("under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment."); *Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003) ("circumstances which would justify a detention will not necessarily justify a detention by handcuffing . . . more is required."); *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) ("handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop.") After all, handcuffs are the hallmark of traditional arrests (although not dispositive). *See, e.g.*, *Dunaway v. New York*, 442 U.S. 200, 212 (1979); *United States v. Juvenile (RRA-A)*, 229 F.3d 737, 743 (9th Cir. 2000) ("we conclude that [the] handcuffing was the clearest indication that [they were] no longer free to leave and therefore find it to be the point of arrest.")

Officer Defendants do not set forth any concrete argument to justify grabbing Centeno to handcuff him. (ECF 116 at 15:8-17); *see, e.g., Royer*, 460 U.S. at 500 ("it is

---

[5] Although the Ninth Circuit often states the ultimate determination is whether a reasonable person would feel free to leave after brief questioning, it uses a test that considers the justification for using restraints, etc. from the officer's perspective. *Edwards*, 761 F.3d at 981.

[6] Although Walker stated, "Stop. You're gonna be detained," that would not alert a reasonable person as to the imminent use of restraints because such actions are uncommon during police detentions.

the [government's] burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."); *United States v. Ricardo D.*, 912 F.2d 337, 340 (9th Cir. 1990) ("any overt show of force or authority should be justified under the circumstances.") Officer Defendants contend Walker grabbed Centeno's arms prior to the arrest and argue his resistance established probable cause to arrest him. Yet their argument does not address any case law on using restraints during detentions (*i.e.*, before arrest). (ECF 116 at 15:8-17).

Before the detention, Centeno complied with Officer Defendants' order to put down the tool and answered their questions. Walker's action of grabbing Centeno's arms to handcuff him, without any explanation, would lead a reasonable innocent person to believe Walker decided to make an arrest and they were not free to leave after brief questioning. Although Walker made a statement that Centeno would be "detained," he did not inform Centeno he would be released once the investigation was completed (*e.g.*, after determining ownership) or that he was being temporarily handcuffed for the officer's safety. *See United States v. Johnson*, 581 F.3d 994, 999 (9th Cir. 2009) ("even after all three men were secured with handcuffs while the officers ran a background check, the officers repeatedly reassured the suspects that the detention might be nothing more than a misunderstanding and that its purpose was merely investigatory.") And again, Centeno was already detained at this point (*i.e.*, Walker merely stated what had already occurred).

Viewing the evidence in the light most favorable to Centeno and drawing all reasonable inferences in his favor, once Walker grabbed Centeno's arm to handcuff him, the actions were sufficiently intrusive that a reasonable innocent person in Centeno's situation would not have felt free to leave after brief questioning.

Second, viewing the evidence in the light most favorable to Centeno and drawing all reasonable inferences in his favor, there were no reasonable justifications for Walker's actions. *United States v. $109,179 in United States Currency*, 228 F.3d 1080, 1085 (9th

Cir. 2000) ("neither handcuffing a suspect nor relocating a suspect automatically turns a detention into an arrest where these actions are reasonably taken for safety and security purposes.")

Officer Defendants outnumbered Centeno and surrounded him near the vehicle. There is no evidence other individuals were in the immediate area or at risk. Centeno did not attempt to flee or pose a flight risk. Centeno complied with Walker's order to put down the metal tool. Gallivan grabbed the tool and threw it out of reach. *See, e.g., Torres v. City of Madera*, 648 F.3d 1119, 1126 (9th Cir. 2011) (reasonable juries can, taking the totality of the circumstances into account, conclude that an officer's poor judgment caused them to act with undue haste). When Gallivan ordered Centeno to stay in place, he complied. Centeno answered Officer Defendants' questions even though he had no obligation to do so. *United States v. Lopez*, 482 F.3d 1067, 1078 (9th Cir. 2007) ("apart from disclosing one's identity, a person detained by police has no general obligation to answer questions or volunteer information.") Officer Defendants do not contend they were subject to any inherent risks due to the reported crime (vehicle break in). Although Centeno had a ten-inch flashlight in his hand, Officer Defendants did not tell him to put it down before Walker grabbed him and, per Walker's declaration, he did not notice Centeno was still holding the flashlight until after he grabbed his arms. To the extent Defendants argue Centeno attempted to flee when he started to walk past Gallivan, that argument is rejected. Centeno had no obligation to remain in place before Officer Defendants detained him (*i.e.*, he could walk away). *See United States v. Mendenhall*, 446 U.S. 544, 555 (1980).

Defendants characterize Walker grabbing Centeno's arms to handcuff him as an attempt to "detain" him. But Defendants also state Centeno made "a strange and unsupported argument that [Officer Defendants] detained Centeno because he was agitated. This is not correct." (ECF 159 at 9).

And Defendants do not contend probable cause existed based on the reported attempted vehicle break in. They contend it was Centeno's resistance to Walker grabbing his hands that established probable cause to arrest him.

Viewing the evidence in the light most favorable to Centeno and drawing all reasonable inferences in his favor, a reasonable jury could conclude there was no need for Walker to grab Centeno's arms. Overall, a reasonable jury could conclude the detention transformed into an arrest without probable cause when Walker grabbed Centeno's arms to handcuff him.

For the same reason, Walker is not entitled to qualified immunity on the unlawful arrest claim. It would have been clear to any reasonable officer that Walker's conduct violated the Fourth Amendment. Intrusive means or restraints are only permissible during detentions in "special circumstances." *Green v. City & Cnty. of San Francisco*, 751 F.3d 1039, 1047 (9th Cir. 2014). Those circumstances are when: (1) a suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight, (2) police have information that the suspect is armed, (3) the stop closely follows a violent crime, or (4) police have information that a violent crime is about to occur. *Id.*; *Lambert*, 98 F.3d at 1189; *United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987) ("the use of force during a stop does not convert the stop into an arrest if it occurs under circumstances justifying fears for personal safety."); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) ("if the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.")

It is also well established that individuals may not be subjected to a de facto arrest in the absence of probable cause. *See Green*, 751 F.3d at 1052. In the unlawful arrest context, "the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to

3:19-cv-2098-L-DEB

qualified immunity." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (*per curiam*). But again, Defendants do not contend probable cause existed when Walker initially restrained Centeno.

Because Walker's conduct of grabbing Centeno's arms transformed the detention into an arrest, Gallivan is entitled to summary adjudication.[7] The claim against Walker survives summary judgment.

Even if Walker's actions did not transform the detention into an arrest, the unlawful arrest claim would survive summary judgment.

Officer Defendants argue they had probable cause to arrest Centeno under California Penal Code section 148(a). That section makes it a misdemeanor to willfully resist, delay, or obstruct any peace officer in the discharge of their lawful duties. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). An arrest under section 148(a)(1) requires probable cause to believe: (1) the defendant willfully resisted, delayed, or obstructed a peace officer; (2) when the officer was engaged in the performance of their duties; and (3) the defendant knew or reasonably should have known the other person was a peace officer engaged in their duties. *In re Muhammed C.*, 95 Cal. App. 4th 1325, 1329 (2002). "In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Smith v. Cty of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (*en banc*). That is, it is not a crime to resist unlawful orders. *Id.*; *Velazquez*, 793 F.3d at 1019 ("a suspect cannot be arrested for violating section 148 because he evaded an officer's attempt to arrest him unlawfully.") "And, for the purposes of Section 148(a), an officer is not lawfully performing [their] duties when [they] detain an individual without reasonable suspicion or arrests an individual without probable cause." *Velazquez*, 793 F.3d at 1019.

---

[7] Centeno does not raise the "integral participant" doctrine as to Gallivan. *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996); *Skinner*, 969 F.3d at 941.

1       Specifically, Officer Defendants contend Centeno obstructed their performance of

2   lawful duties when he resisted Walker's attempt to restrain him. But their argument as to

3   that is conclusory: "[Officer Defendants] were engaged in the performance of their lawful

4   duties when they attempted to detain Centeno in furtherance of their investigation of the

5   reported vehicle burglary." (ECF 116 at 17). Officer Defendants also fail to explain or

6   cite evidence to support the contention that Walker attempted to handcuff Centeno so

7   they "could safely continue their investigation." (*Id*. at 18). Regardless, given the

8   evidence discussed above, both arguments are unavailing.

9       Walker therefore failed to meet his initial burden because he neither (1) produced

10  affirmative evidence negating an essential element nor (2) demonstrated an absence of

11  evidence to support Centeno's claim. That is, Walker failed to meet the burden as to

12  whether grabbing Centeno to handcuff him was lawful. *See, e.g., People v. Stier*, 168 Cal.

13  App. 4th 21, 27 (2008) ("generally, handcuffing a suspect during a detention has only

14  been sanctioned in cases where the police officer has a reasonable basis for believing the

15  suspect poses a present physical threat or might flee."); *In re Antonio B.*, 166 Cal. App.

16  4th 435, 442 (2008) (officer's 'policy' of handcuffing any suspect he detains was

17  unlawful).

18      And it was clearly established that an officer cannot arrest an individual for

19  resisting unlawful actions. *Smith*, 394 F.3d at 695 (*en banc*); *Velazquez*, 793 F.3d at 1019.

20  ***Malicious Prosecution Claim***

21      Centeno must show Officer Defendants initiated the criminal prosecution with the

22  intent to deprive him of equal protection or otherwise intended to subject him to a denial

23  of constitutional rights. *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985). He

24  provides no evidence to support this claim. Centeno also failed to cite any legal support

25  for the proposition that attending the court hearing constituted a seizure, and the Court is

26  aware of none. Officer Defendants are entitled to judgment as to this claim.

27      To the extent Centeno asserts a related claim under state law, it also fails because

28  Defendants are immune. Cal. Gov. Code §§ 821.6 ("a public employee is not liable for

injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."); 815.2 ("a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.")

### *Excessive Force Claim*

Centeno asserts an excessive force claim against Officer Defendants. They raise qualified immunity as a defense. An officer's force must be objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Scott*, 550 U.S. at 383. To assess whether an officer's actions were reasonable, courts must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396; *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (*en banc*). The Court assesses the "reasonableness of a particular use of force from the perspective of a reasonable officer on the scene," not with hindsight. *Graham*, 490 U.S. at 396.

To determine the government's interest at stake, the Court considers (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect resisted arrest or attempted to flee. *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011) (*en banc*). The most important factor is the second one. *Isayeva*, 872 F.3d at 947. The Court may also consider other factors, including less intrusive alternatives and whether proper warnings were provided. *Id*.

Because this analysis is fact-sensitive, summary judgment should be granted sparingly. *Santos v. Gate*s, 287 F.3d 846, 853 (9th Cir. 2002); *Green*, 751 F.3d at 1049 ("the determination [as to] whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases.")

First, Centeno argues the takedown was excessive. But viewing the evidence in the light most favorable to Centeno and drawing all reasonable inferences in his favor,

Centeno resisted Walker's attempt to handcuff him (he pulled away, clenched his fists, and leaned forward). Accordingly, Officer Defendants met their initial burden at the summary judgment stage. No reasonable jury could conclude the force was excessive. Centeno failed to provide any evidence to raise a genuine issue of fact as to this claim. This is sufficient to grant Officer Defendants' motion as to the takedown. Alternatively, the motion is granted based on qualified immunity because Centeno failed to cite precedent that would have put Officer Defendants on clear notice that taking him to the ground under the circumstances was excessive. *Reichle*, 566 U.S. at 664; *Donovan v. Phillips*, 685 F. App'x 611, 612-13 (9th Cir. 2017) (officer's use of "control hold" when plaintiff exited car by grabbing their wrist, and pulling their arm downward, causing them to roll onto the ground was "relatively minimal" force).[8] The Court grants the motion on that portion. *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021).

The issue of excessive force is also raised as to Gallivan holding Centeno's left hand and placing his hand on Centeno's neck with minimal pressure while on the ground. Centeno failed to raise a genuine issue of material fact. And Gallivan is entitled to summary adjudication. Alternatively, Centeno failed to cite precedent that would have put Gallivan on clear notice that his force under the circumstances was excessive.

Lastly, the issue of excessive force is raised as to Walker's knee strikes to Centeno's back. The knee strikes, under the circumstances, involved at least intermediate force. Officer Defendants placed Centeno on his right side. During that time, Gallivan held his left arm and had his other hand on Centeno's neck. The video shows Officer Defendants restrained Centeno's movement. That posture could pose a challenge to comply with the commands (*i.e.*, placing right arm behind back while two officers hold

---

[8] The Court's determination on the unlawful detention and arrest claim is not dispositive as to the excessive force claim. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (lack of probable cause does not establish an excessive force claim); *Mattos*, 661 F.3d at 443 n.4; *Velazquez*, 793 F.3d at 1024.

3:19-cv-2098-L-DEB

the person down on their right side). The evidence also does not show Centeno posed a safety or flight risk. The crime at issue was not severe (potential car burglary or unfortunate locking of keys in car). And Walker did not warn Centeno that he would perform the knee strikes.

Walker's justification for the force is that Centeno had his right arm pinned under his torso after Officer Defendants told him three times to place the arm behind his back. But Centeno claims he did not resist Officer Defendants. Viewing the video in the light most favorable to Centeno and drawing all reasonable inferences in his favor, Centeno did not resist or refuse Officer Defendants' commands while on the ground. *Id.* Under the circumstances, as shown in the video, a reasonable jury could conclude Walker's two knee strikes were excessive.[9]

The Court must next determine "whether clearly established law prohibited [Walker] from using the degree of force that he did in the specific circumstances that [he] confronted." *O'Doan*, 991 F.3d at 1037; *see also Mullenix*, 577 U.S. at 12.

Again, per Centeno, he did not resist Officer Defendants' commands. The video is consistent with this claim. It also shows Centeno held in a position that would make it difficult to comply with the orders. Under that version of events, it would have been clear to any reasonable officer that performing knee strikes was objectively unreasonable. *Blankenhorn*, 485 F.3d at 480 (Plaintiff "claims he never pinned his arms underneath his body. (The video does not clearly show whether he did so or not). Crediting [Plaintiff's] version of the events, as we must at a summary-judgment stage, we conclude that a rational jury could find that if [Plaintiff] did not maneuver his arms beneath his body it eliminated the need for any use of force to release them, and thus that [the officer's] punches were not reasonably justified by the circumstances as he claims."); *Vos*, 892 F.3d

---

[9] Given that, the Court has not addressed the parties' arguments as to whether Walker struck Centeno with his knee more than twice. Centeno also does not argue the integral participant doctrine applies. *Boyd*, 374 F.3d at 780.

3:19-cv-2098-L-DEB

at 1028; *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021) (the "right to be free from the application of non-trivial force for engaging in mere passive resistance" is well established.); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances.") Walker is not entitled to qualified immunity. The Court therefore denies the summary judgment motion as to Walker's knee strikes.

### Monell Claim

"Municipalities may be liable under section 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 603-604 (9th Cir. 2019); *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.") That is, a municipality must have caused the constitutional violation. *Harris*, 489 U.S. at 385. Centeno must "show *deliberate* action attributable to [Carlsbad] that directly caused" the constitutional violation. *Horton*, 915 F.3d at 603 (emphasis original).

Here, Carlsbad presented evidence as to its official policies that mirror the constitutional requirements or restrictions on law enforcement activities. Centeno failed to cite any official policy that caused the asserted constitutional violations. And he cannot rely exclusively on his own incident to show Carlsbad had a long-standing custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("liability for improper custom may not be predicated on isolated or sporadic incidents.") Centeno also failed to present any evidence that Officer Defendants' supervisor made a conscious, affirmative choice to ratify their conduct, as opposed to a mere failure to overrule it. *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1236 n.8 (9th Cir. 2011) (discussing law on failure to investigate and discipline employees in the face of widespread constitutional

violations). There are no genuine issues of material fact as to the *Monell* claim and Carlsbad is entitled to summary adjudication.

### Bane Act Claim (California Civil Code Section 52.1)

Centeno asserts a Bane Act claim against Defendants related to the detention and arrest. Centeno must show they made threats or engaged in coercion in addition to the conduct inherent in the seizure. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015); *see also Allen v. City of Sacramento*, 234 Cal. App. 4th 41 (2015) ("a wrongful arrest or detention, without more, does not satisfy both elements of [the Bane Act].") Defendants showed there is no evidence to support that claim, and Centeno failed to produce any evidence. Defendants are therefore entitled to summary adjudication as to wrongful detention and unlawful arrest claim.

But based on the Court's above determination as to Walker's knee strikes, it rejects Defendants' argument on Centeno's excessive force claim. (*See* ECF 116 at 27) ("the elements of a Bane Act claim for excessive force are essentially identical to those of a § 1983 excessive force claim. . . . Therefore, because, in this case, plaintiff cannot maintain a claim for excessive force under Section 1983, defendants are also entitled to summary judgment as to plaintiff's Bane Act claim, as a matter of law.") The Bane Act claim against Walker as to his knee strikes survives summary judgment. Defendants are entitled to summary adjudication on the remaining portions.[10]

### Punitive Damages

Officer Defendants moved for summary adjudication on Centeno's request for punitive damages.

A jury may award punitive damages under section 1983 if a defendant's conduct was driven by evil motive or intent, was malicious or oppressive, or when it involved a

---

[10] Because Gallivan is entitled to summary adjudication as to the excessive force claim, the Court does not address his argument that the state law claim is time-barred under the California Tort Claims Act.

3:19-cv-2098-L-DEB

reckless or callous indifference to someone's constitutional rights. *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). It is subject to summary adjudication when the plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances.

Centeno failed to respond to Officer Defendants' argument. The Court construes that as a waiver or an abandonment. *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (failure to raise argument in opposition to summary judgment constitutes waiver); *Image Technical Service, Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n.1 (9th Cir. 1990); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).[11] The Court therefore grants Defendants' summary judgment motion as to the request for punitive damages.

### *Centeno's Summary Judgment Motion*

Centeno failed to set forth evidence to support his claims against Defendants. Centeno consequently failed to meet his "heavy burden" at the summary judgment stage. *Barnes*, 889 F.3d at 538. The Court denies his motion for that reason. Alternatively, his motion is denied because there are triable issues of material fact as to Centeno's conduct during the incident, including whether he resisted lawful restraints. Viewing the evidence in the light most favorable to Defendants (as the opposing parties) and drawing all reasonable inferences in their favor, a reasonable jury could conclude their actions were lawful under the circumstances. The Court therefore **DENIES** Centeno's motion.

Centeno also asks for leave to amend his complaint. Specifically, he seeks leave to add an Americans with Disabilities Act claim. The Court incorporates its prior order that denied a near identical request: The proposed claim relates to the same April 27, 2019, police incident at issue in this excessive force lawsuit. There is no doubt Centeno knew about the facts that support the ADA claim (*e.g.*, Officer Defendants' conduct during the

---

[11] To the extent Centeno seeks punitive damages against Carlsbad, it is immune. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); Cal. Gov. Code § 818.

3:19-cv-2098-L-DEB

arrest and Centeno's disability) long before the deadline in the scheduling order. And ignorance about the law, carelessness, or inaction does not show "good cause." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608-609 (9th Cir. 1992). (ECF 166). The same is true for the proposed claim against the Carlsbad Police Chief and Carlsbad Mayor. The Court therefore **DENIES** Centeno's request.

## IV.    CONCLUSION

For the above reasons, the Court **DENIES** Centeno's motion in full. The Court also **DENIES** Defendants' motion as to the (1) section 1983 unlawful arrest claim against Walker, (2) section 1983 excessive force claim against Walker as to the knee strikes, and (3) Bane Act claim against Walker as to the knee strikes. In all other respects, the Court **GRANTS** Defendants' motion.

**IT IS SO ORDERED.**

Dated:  December 22, 2021

Hon. M. James Lorenz
United States District Judge