UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS BARAJAS CENTENO,<br><br>                                    Plaintiff,<br><br>v.<br><br>CITY OF CARLSBAD; JORDAN<br>WALKER; and DOES 1 through 10,<br><br>                                    Defendants. | Case No.:  19-CV-2098-GPC<br><br>**ORDER DENYING DEFENDANT<br>JORDAN WALKER'S RENEWED<br>MOTION FOR AN ORDER<br>DISQUALIFYING GENARO LARA<br>AS PLAINTIFF'S COUNSEL**<br><br>**[ECF No. 190]** |

On March 1, 2022, Defendant Jordan Walker filed a renewed motion for an order disqualifying Genaro Lara as Plaintiff's counsel. ECF No. 190. The parties have fully briefed the matter. ECF Nos. 192, 199. The Court held a hearing on this matter on April 20, 2022.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   BACKGROUND

On May 17, 2021, Defendants the City of Carlsbad ("the City"), Jordan Walker ("Defendant Walker" or "Defendant"), and James Gallivan (collectively, "Defendants")[1] filed their first motion for an order disqualifying Genaro Lara ("Mr. Lara") as Plaintiff's counsel, restraining Mr. Lara from communicating with Defendants, and awarding sanctions. The bases for this initial disqualification motion were similar to the grounds on which Defendant brings the pending motion before this Court: that Plaintiff's counsel, Genaro Lara, continually insulted defense counsel Daniel Modafferi, threatened Mr. Modafferi with physical violence, fabricated allegations that Mr. Modafferi committed misconduct during the course of the litigation, improperly contacted the City in contravention of California Rule of Professional Conduct ("Rule") 4.2, threatened to pursue criminal charges in order to obtain an advantage in the instant civil litigation in violation of Rule 3.10, and filed a separate civil lawsuit for the purpose of harassing the City and Mr. Modafferi. ECF No. 128-1 at 4-9.

Concurrently, the issue of Mr. Lara's misconduct arose before Magistrate Judge Daniel E. Butcher. On July 2, 2021, Magistrate Judge Butcher issued an Order imposing sanctions on Mr. Lara following a hearing on the Magistrate Judge's Order to Show Cause. ECF No. 149. The hearing and Order concerned insulting comments written by Mr. Lara to and about Mr. Modafferi in two letters, dated September 17 and October 20, 2020. *Id.* at 5. In the letters, Mr. Lara impliedly threatened Mr. Modafferi with physical violence, called him a "low class thug," a "disgrace to the human race," and "an unmitigated liar and a cheat," accused Mr. Modafferi of tampering with evidence, and stated that Mr. Modafferi's "reckless, base, ignoble conduct is manifest evidence of the

---

[1] Since the time of this motion, the City of Carlsbad and James Gallivan have been granted summary judgment, leaving Jordan Walker the only moving party before this Court.

1   low class vulgar, crass, nature of [his] origin . . ." *Id.* Magistrate Judge Butcher

2   sanctioned Mr. Lara and ordered him to pay $1000 ($500 per letter) to Mr. Modafferi. *Id.*

3   at 14. The Magistrate Judge also referred Mr. Lara to the District's Standing Committee

4   on Discipline to investigate Mr. Lara's fitness to practice law in the District and to

5   determine whether additional discipline was appropriate, and further ordered Mr. Lara to

6   report the sanctions imposed therein to the California State Bar by August 2, 2021. *Id.*

7        On February 18, 2022, District Judge M. James Lorenz issued an Order denying

8   without prejudice Defendant's first motion to disqualify Plaintiff's counsel, ECF No. 128.

9   ECF No. 186. Judge Lorenz found that Mr. Lara did not violate Rule 4.2 because Mr.

10  Lara sent a letter to the Mayor of Carlsbad, who was not a party to the litigation, rather

11  than to a represented party. *Id.* at 3. Judge Lorenz also found that Mr. Lara did not violate

12  Rule 3.10 because Mr. Lara did not inform Defendants that he was pursuing a parallel

13  criminal lawsuit, and therefore the lawsuit was not used for the purpose of gaining an

14  advantage in the instant litigation. *Id.* at 4 (noting that the pursuit of a criminal case

15  parallel to a civil proceeding is often valid and not necessarily prohibited by Rule 3.10).

16  Judge Lorenz also found that the separate civil action, which was dismissed with

17  prejudice on the pleadings, did not warrant disqualifying counsel in the instant action. *Id.*

18  However, Judge Lorenz did find that Mr. Lara threatened Mr. Modafferi and that Mr.

19  Lara made unprofessional remarks about Mr. Modafferi showing a lack of common

20  decency. *Id.* at 5. Judge Lorenz also noted that Mr. Lara made disrespectful remarks

21  about the Court, including referring to Magistrate Judge Daniel E. Butcher as "the

22  butcher of [his] civil rights" following the Order to show cause hearing and sanctions

23  Order. *Id.*

24       Judge Lorenz ultimately denied the first Motion for disqualification based on the

25  "practical realities" of the case: primarily that if Mr. Lara were disqualified, his client,

26  Jose Centeno, would face a gap in representation before counsel could potentially be

27

28

1  appointed from the District's Pro Bono Panel—and that this would be a heavy blow in a
2  case "primed for trial." Judge Lorenz also noted that there would be significant logistical
3  issues "due to Centeno's residence in a vehicle somewhere in Carlsbad, California, and
4  limited English proficiency . . . [and] any change in counsel would further delay a final
5  resolution in this action." *Id.* at 6. In denying the motion, however, Judge Lorenz
6  explicitly pointed out that "[t]his order does not prevent Defendants from raising a new
7  motion later in the proceedings." *Id.* Judge Lorenz also admonished Mr. Lara "to refrain
8  from engaging in any more unprofessional or unethical conduct [because] Mr. Lara's
9  statements about opposing counsel are indefensible and have no place anywhere." *Id.* at
10  7. Judge Lorenz closed the Order by emphasizing that "[t]he Court has an arsenal of
11  sanctions it may impose for any more unprofessional or unethical conduct" and warning
12  Mr. Lara to look closely at Civil Local Rule 2.1 (setting forth the District's Code of
13  Conduct) before making any statements or writing any letters. *Id.*

14      The underlying action was reassigned to this Court on February 23, 2022. ECF No.
15  188. On March 1, 2022, Defendant Walker, the sole remaining defendant in this action,
16  filed a renewed motion to disqualify Mr. Lara as Plaintiff's counsel. ECF No. 190.
17  Defendant complains that despite Magistrate Judge Butcher's sanctions Order and Judge
18  Lorenz's admonition, Mr. Lara's misconduct has persisted and indeed Mr. Lara "has now
19  been emboldened by the denial of the motion to disqualify." ECF No. 190-1 at 3.
20  Defendant complains of the following misconduct:

21      First, Mr. Lara sent a letter to Mr. Modafferi's law partners on February 21, 2022.
22  The letter refers to Magistrate Judge Butcher's order as a "judicial lynching" and refers to
23  the Standing Committee as "part of the judicial tyranny that has been ordered." *Id.* The
24  letter also threatens each of Mr. Modafferi's law partners with suit for "aiding and
25  abetting" Mr. Modaferri. ECF No. 190-2 at 4-5 (Ex. A to Decl. of Daniel S. Modafferi).

26

27

28

4

Second, on February 23, 2022, Mr. Lara filed a declaration with the Court in support of his motion to strike in which he repeats his insults against Mr. Modafferi, including that Mr. Modafferi is "low class," "vulgar," "reprehensible," and a "disgrace to the human race." ECF No. 187-1 para. 24. Defendant states that Mr. Lara justified the comments as his "personal opinions" and reiterated that his statement about reacting in self-defense, which Judge Lorenz found to be a threat against Mr. Modafferi, was supported by the "law of self defense in the common law of the United States." *Id.* The declaration also refers to Magistrate Judge Butcher as a "juror, prosecutor, and executioner" and calls Mr. Modafferi a "miscreant." *Id.* para. 28, 29.

Finally, Defendant points out that to the extent that Judge Lorenz was concerned that disqualifying Mr. Lara would require Plaintiff to seek new counsel on the eve of trial, that concern is assuaged by the fact that there is no pending date for a pretrial conference, nor is trial scheduled in this matter. ECF No. 190-1 at 5.

Plaintiff's Opposition briefing[2] argues that his actions were justified by Mr. Modafferi's "illegal conduct" and refers to the Magistrate Judge's Order imposing fines as "draconian and [] motivated in [sic] spite and hatred toward plaintiff's counsel." ECF No. 192 at 2-3. Plaintiff contends that Mr. Modafferi was able to "double-dip" because he was paid by the City for his work on the case, but also "convince[ed] the magistrate to impose money from plaintiff counsel's personal funds." *Id.* Plaintiff also speculates that "[a]nother possible motive for the magistrate's bad faith rulings against plaintiff's

---

[2] Much of Plaintiff's Opposition brief focuses on Modafferi's alleged misconduct with respect to a deposition, in which Plaintiff's counsel accuses Modafferi and a court reporter, Lori Turner, of mocking him. Further, Lara accuses Modafferi of witness tampering in obtaining a declaration from Turner that no mocking occurred. This Order deals with the specific issue at hand, disqualification, and since Plaintiff has raised the deposition and tampering issues in a separate motion to strike, the Court will not address these issues herein. Whether or not Turner's declaration was proper, or whether any mocking occurred during the deposition, have no direct bearing on the issue of Plaintiff's counsel's misconduct.

counsel could be that plaintiff moved for the [sic] magistrate to recuse himself, because he did not know the law on how to proceed with the investigation and ruling on motion for sanctions, and did not know the difference between criminal and civil contempt, and the proper rules to be used . . . The magistrate did not respond to queries about his flawed, impermissible, defective prosecution of plaintiff's counsel." *Id.* at 3. Plaintiff insists that he did not violate any rules, threaten anyone, or commit any improper actions. *Id.* at 5. According to Plaintiff, "[t]he bottom line is that they [the Magistrate Judge and Modafferi] pursued in a coordinated action without statutory jurisdiction and added insult to injury by prohibiting plaintiff's counsel to subpoena witnesses, to cross-examine witnesses, to know the basis or reasons for the imposition of horrendous illegal fines." *Id.* Plaintiff also further accuses the Magistrate Judge of "showing biased [sic] in favor of one side over the other and violating due process rights to present evidence" during the Order to Show Cause hearing by not allowing the service of subpoenas or the presentation of evidence. *Id.* at 10. Finally, Plaintiff explains that his referral to the Magistrate Judge as the "butcher of my civil and constitutional rights" was "not an exaggeration and it is not used to disrespect [sic] him," but rather was a "metaphor, a poetic term that expresses my depression, despair, my anguish over an [sic] injustices." *Id.* Plaintiff's Opposition brief ends with a prayer for the following relief: (1) to permit Plaintiff to subpoena Mr. Modafferi to testify about "his multiples instances of perjurious conduct in this case"; (2) to strike the monetary sanctions ordered against Plaintiff's counsel and for Defendant to return the sanctions payment; (3) to enter default judgment as a sanction in favor of Plaintiff; (4) to declare each member of Mr. Modafferi's law firm liable as an aider and abettor of Mr. Modafferi's alleged misconduct; (5) to order the City of Carlsbad to implement a Civilian Review Board to investigate police abuse; and (6) to award attorney's fees.

1    This Court held a hearing on the Motion to Disqualify and admonished Mr. Lara
2    for his statements and conduct, noting the Court's great concern over Mr. Lara's
3    unprofessional behavior. In particular, the Court instructed Mr. Lara to focus on the
4    merits of the case and on his representation of his client, rather than devolving into side-
5    issues of a personal nature. Mr. Lara stated that he would "take to heart" the Court's
6    advice to abstain from making any further disparaging, personal, or improper remarks
7    about opposing counsel or any officer of the court. Hrg. Trans. at 11:17. However, Mr.
8    Lara also opined that the words he used, for which he had been sanctioned, were what he
9    believed to be the "proper adjectives" which were "well-thought . . . [and] fit the
10   situation." *Id.* at 5:25-6:1. Mr. Lara also reiterated his belief that Mr. Modafferi should be
11   subject to RICO liability for his purported actions, prompting the Court to question again
12   whether Lara was prepared to represent his client fully and zealously by focusing on the
13   needs and interests of the client, rather than on personal vendettas.

14   **II.   DISCUSSION**

15          The disqualification of counsel because of an ethical violation is a discretionary
16   exercise of the trial court's inherent powers. *Crenshaw v. MONY Life Ins. Co.*, 318
17   F.Supp.2d 1015, 1020 (S.D. Cal. 2004) (citing *United States v. Wunsch*, 84 F.3d 1110,
18   1114 (9th Cir. 1996)). However, disqualification is a drastic measure that is strongly
19   disfavored, especially because motions for disqualification are often tactically motivated.
20   *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003).
21   Because they carry the potential for abuse, disqualification motions should be subject to
22   "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*,
23   760 F.2d 1045, 1050 (9th Cir. 1985). "Even a violation of the California Rules of
24   Professional Conduct does not automatically compel disqualification." *Del Thibodeau v.
25   ADT Security Servs.*, No. 3:16-cv-2680-GPC-AGS, 2018 WL 2684254, at *2 (S.D. Cal.
26   June 5, 2018) (citing *Crenshaw*, 318 F.Supp.2d at 1020)). The question, rather, is whether

27

28

7

the misconduct of the attorney in question will affect the outcome of the proceedings before the court. *Id.* (citing *Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 303 (1989)). "Disqualification is inappropriate simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings; other sanctions such as imposition of attorneys' fees and costs or reporting misconduct to the State Bar of California is more appropriate in this situation." *Id.* In other words, disqualification looks to prevent future disruptive effects on the coming proceedings indicated by an attorney's conduct, rather than simply to punish past wrongs. "The district court is permitted to resolve disputed factual issues in deciding a motion for disqualification and must make findings supported by substantial evidence." *Visa U.S.A.*, 241 F.Supp.2d at 1104.

Based on the parties' filings and indeed on Plaintiff's counsel's own briefing, it appears that Mr. Lara continues to disrespect both opposing counsel and this Court, including accusing the Magistrate Judge of being "draconian" and "motivated in [sic] spite and hatred toward plaintiff's counsel." ECF No. 192 at 3. Such accusations are baseless, grounded in reprehensible disrespect for the functions and responsibilities of this Court, and are abhorrent to Mr. Lara's responsibilities and position as an attorney and officer of the court. The Court reprimands Mr. Lara for this behavior and warns him not to continue further with such intolerable statements, whether "metaphor" or not (including repeating threats of physical self-defense against Mr. Modafferi, calling defense counsel names or insults of any kind, and casting aspersions on the integrity of this Court, including the Magistrate Judge). Any further insulting, degrading, or uncivil statements by Mr. Lara will result in an order removing Mr. Lara as counsel of record. Mr. Lara should take the opportunity this Court extends to review and reflect on Civil Rule 2.1, Professionalism, of the Local Rules of this District. The Court points Mr. Lara to two subsections in particular: 2.1(a)(2) and (3), which require all lawyers practicing in this district to maintain the integrity of our justice system, *including by not impugning the*

*integrity of its proceedings, or its members*, and which warn lawyers to conduct themselves amicably, professionally, and *not personally* with opposing counsel. Mr. Lara's statements to and about defense counsel are grave violations of these standards, and the Court expects Mr. Lara to take this admonition with the utmost seriousness.

While Mr. Lara's statements are serious in their effrontery, the Court is not prepared to find that the drastic measure of disqualification is warranted at this time. However, Defendants are free to bring a renewed motion to disqualify or to impose further sanctions should Mr. Lara continue to violate the bounds of civility during this litigation, especially if any substantive breach of the ethical considerations underlying the fundamental principles of our judicial process should arise. *See People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1144-45 (1999) (noting that disqualification balances several important considerations, including the client's right to chosen counsel and the need to maintain ethical standards of professional responsibility).

As an attorney, Mr. Lara is required to represent his client zealously within the bounds of the law.  While the practice of civil law is often uncivil, a lawyer who is unable to control their prose and their temper is not in control of himself and is less effective as an advocate. Rather than impugning the integrity of all of those around him, an effective lawyer succeeds by building goodwill and wielding the power of persuasion, not by the release of outrage. Mr. Lara's paramount duty is the professional and effective representation of Mr. Barajas Centeno in bringing his claims, which take precedence over any personal feeling that Mr. Lara may have about the case. Mr. Centeno will be best served by Mr. Lara's professionalism, grace, and respect toward opposing counsel and the Court.

The Court recognizes the frustration inherent in dealing with repeated incivilities from opposing counsel, which Defendants have faced continually throughout these proceedings. However, under the standard for attorney disqualification due to unethical

9

conduct, the Court looks to whether these statements, however discourteous, will have a substantial continuing effect on future judicial proceedings. At this point in time, the Court will provide Mr. Lara with a final chance to conduct himself professionally in this litigation—noting, however, that should such behavior continue to impede the litigation and the interests of Mr. Lara's client, then the Court will have no recourse but to disqualify or otherwise sanction Mr. Lara.

**III.     CONCLUSION**

Defendant's renewed motion to disqualify plaintiff's counsel, Genaro Lara, is HEREBY DENIED WITHOUT PREJUDICE. Though the Court does not find a substantial enough basis to enact the drastic measure of disqualification at this time, Mr. Lara is cautioned in the strongest terms to immediately cease any harassment, insulting language, and personal attacks against both defense counsel and any officers or functions of this Court. Further violations will be met with discipline, including possible monetary sanctions. Furthermore, the Court finds no basis to award any of the relief prayed for in Plaintiff's opposition briefing, ECF No. 192, and all such relief is HEREBY DENIED.

**IT IS SO ORDERED.**

Dated:  April 28, 2022

Hon. Gonzalo P. Curiel
United States District Judge

19-CV-2098-GPC